FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 JUL 29 AM 9: 17



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67456-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| KING COUNTY DISTRICT COURT WEST DIVISION, Judge Mark Chow; KING COUNTY DISTRICT COURT, EAST DIVISION, Judge David Steiner; KING COUNTY DISTRICT COURT, SOUTH DIVISION, Judge Darrell Phillipson; BRETT R. BALLOW; and LESLIE P. FAUSTO, | ) | |
| | ) | |
| Petitioners. | ) | FILED: July 29, 2013 |
| | ) | |

APPELWICK, J. — The sole issue on appeal is whether, as a matter of law, every breath alcohol concentration test result is inadmissible in a criminal prosecution unless the State also introduces a statement of uncertainty for each test. Like every scientific measurement, breath test results have a margin of uncertainty. The Washington State Patrol's Toxicology Laboratory Division calculates this uncertainty in terms of a confidence interval. A panel of King County District Court judges ordered that breath tests are categorically inadmissible unless the State introduces a corresponding

confidence interval. On writ of review, the King County Superior Court reversed the district court's decision. We affirm.

## FACTS

Brent Ballow and Leslie Fausto were arrested separately in King County for driving under the influence of intoxicating liquor (DUI), in violation of RCW 46.61.502 and RCW 46.61.506.[1] During their arrests, they each consented to a breath alcohol concentration (BrAC) test. Both defendants subsequently moved to suppress their BrAC test results under a countywide suppression order issued in State v. Ahmach, No. C00627921 (King County Dist. Court Jan. 30, 2008).

In Ahmach, a panel of three King County District Court judges entered a countywide suppression order on all BrAC test results, because the Washington State Patrol's Toxicology Laboratory Division (WTLD) was unable to produce reliable test results. Since Ahmach, the WTLD addressed testing irregularities and obtained breath test accreditation from the American Society of Crime Laboratory Directors Laboratory Accreditation Board. As a result, the State requested a hearing under LCrRLJ 8.2(2)[2] for the Ahmach panel to reconsider its decision. The State's motion was granted.

The cases were consolidated for a hearing before the same panel of judges who decided Ahmach. Ballow and Fausto asked the panel to decide whether the State must

---

[1] The State charged Ballow and Fausto under the per se prong of the Washington DUI statute, RCW 46.61.502. A person is guilty under this prong if he or she "has, within two hours after driving, an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506." RCW 46.61.502(1)(a).

[2] LCrRLJ 8.2(2) allows any judge or party to request that the presiding district court judge designate a motion as an "'issue of countywide significance.'" The presiding judge then assigns three judges to act as a panel to hear the motion. Id.

present a corresponding statement of uncertainty to admit BrAC test results at trial. The panel held a five day hearing in August 2010. It heard testimony from four experts: Washington State Toxicologist Dr. Fiona Couper, WTLD Quality Assurance Program Manager Jason Sklerov, former head of the Washington State Patrol breath test program Rod Gullberg, and University of Washington professor Dr. Ashley Emory.

In a September 20, 2010, ruling, the district court lifted the Ahmach suppression order. The court issued a separate order holding that breath test results must be presented by the State at trial with an accompanying uncertainty statement, presented as a confidence interval. The court also wrote that its order put "the State on notice that every discovery packet supplied to defendants must contain the confidence interval for any breath-alcohol measurement the State intends to offer into evidence in that case."[3] It explained that the breath test results are inadmissible if the State fails to present the uncertainty measurement in pretrial discovery or at trial.

Pursuant to RCW 7.16.040, the State sought and obtained a writ of review before the King County Superior Court. The State argued that the district court's decision improperly created a new foundational requirement for all King County DUI cases that was not mandated by statute, administrative rule, protocol, or the rules of evidence. The superior court reversed the district court's conclusion of law that uncertainty statements must be offered by the State as a judicially imposed minimum requirement

---

[3] The court also noted that by failing to turn over such evidence, "the State may subject itself to an appeal of the verdict upon the ground that it failed to provide exculpatory evidence," thereby violating Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The parties on appeal do not discuss the possibility of a Brady violation. But see State v. Thomas, 150 Wn.2d 821, 851, 83 P.3d 970 (2004) ("No Brady violation occurs if the defendant could have obtained the information himself through reasonable diligence.").

in addition to the statutory requirements of RCW 46.61.506. The superior court concluded that trial courts may not use ER 702 to impose a new foundational requirement. But, it further explained that trial courts retain their gatekeeping functions under ER 403 and 702, so they may decide to exclude otherwise admissible breath test results in individual cases. The superior court acknowledged that science evolves and evidence that once met the Frye[4] standard may still be challenged if the science is no longer accepted in the relevant scientific community. However, it explained, the fact that uncertainty analysis now exists does not debunk the science of breath testing and the DataMaster machine.[5]

The superior court also reversed the district court's holding that uncertainty calculations must be provided by the State in discovery. The court explained that a party's discovery obligation does not require that the party provide documents, but rather "'discoverable materials shall be made available for inspection and copying.'" (Quoting CrRLJ 4.7(a)(2)). Uncertainty calculations are readily available from the WTLD.[6] In fact, the WTLD performed uncertainty calculations over 600 times in 2010, mostly at the request of defense attorneys.

The criminal defendants (petitioners) filed a motion for discretionary review that this court granted.

---

[4] Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923).
[5] The DataMaster is the breath test machine currently used in Washington. WAC 448-16-020(1).
[6] At the time of the district court hearing, the WTLD calculated the uncertainty of a particular BrAC test upon request. The WTLD now performs confidence interval calculations as a matter of course on every breath testing machine maintained by the WTLD. The WTLD is the only known state laboratory to provide this information.

## DISCUSSION

In granting discretionary review, we characterized the sole issue on appeal as:

> In a DUI prosecution, where RCW 46.61.506(4) provides that the results of a "breath test performed by any instrument approved by the state toxicologist shall be admissible" at a criminal trial so long as the requirements of that statutory provision are met, do ER 702, City of Fircrest v. Jensen, 158 Wn.2d 384, 143 P.3d 776 (2006), City of Seattle v. Clark-Munoz, 152 Wn.2d 39, 93 P.3d 141 (2004), State v. Cauthron, 120 Wn.2d 879, 846 P.2d 502 (1993),[ overruled in part by State v. Buckner, 133 Wn.2d 63, 941 P.2d 667 (1997),] and related authorities, mandate that the introduction into evidence of the results of an otherwise valid breath alcohol test must be coupled with the government's introduction into evidence of the Washington Toxicology Laboratory Division's calculated "confidence interval" applicable to that test?

Interpretation of an evidence rule is a question of law that we review de novo. State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

Breath test admissibility begins with relevance under ER 401 and ER 402, neither of which are in dispute here. Next, as scientific evidence, breath test results must pass the Frye test. State v. Baity, 140 Wn.2d 1, 10, 991 P.2d 1151 (2000). Under Frye, a court must determine whether an expert's opinion is based on a theory generally accepted in the relevant scientific community. Cauthron, 120 Wn.2d at 886, 890 n.4. Under RCW 46.61.506(4)(a), breath tests are deemed admissible if the State produces prima facie evidence of eight statutory factors regarding the accuracy of the test.[7] The

---

[7] The specific factors are:
> (i) The person who performed the test was authorized to perform such test by the state toxicologist;
> (ii) The person being tested did not vomit or have anything to eat, drink, or smoke for at least fifteen minutes prior to administration of the test;
> (iii) The person being tested did not have any foreign substances, not to include dental work, fixed or removable, in his or her mouth at the beginning of the fifteen-minute observation period;

Washington Supreme Court recognizes that the DataMaster produces scientifically accurate, reliable test results when the eight criteria of RCW 46.61.506(4)(a) are met, satisfying the Frye test.[8] State v. Ford, 110 Wn.2d 827, 833, 755 P.2d 806 (1988); see also State v. Straka, 116 Wn.2d 859, 870, 810 P.2d 888 (1991). Once the statutory foundational requirements are met, RCW 46.61.506(4)(c) specifies that all other challenges to the reliability or accuracy of the test "shall not preclude the admissibility of the test," but instead "may be considered by the trier of fact in determining what weight to give the test result." The Washington Supreme Court upheld the constitutionality of these foundational requirements in Jensen, 158 Wn.2d at 399. Not surprisingly, the petitioners do not contend that the statutory foundational requirements are not met. Nor is there an assertion that the BrAC tests fail the Frye test.

Evidence that is admissible under Frye must still pass the two-part test under ER 702: (1) whether the witness is qualified as an expert and (2) whether the expert testimony is helpful to the trier of fact.[9] State v. Copeland, 130 Wn.2d 244, 256, 922

---

(iv) Prior to the start of the test, the temperature of any liquid simulator solution utilized as an external standard, as measured by a thermometer approved of by the state toxicologist was thirty-four degrees centigrade plus or minus 0.3 degrees centigrade;

(v) The internal standard test resulted in the message "verified";

(vi) The two breath samples agree to within plus or minus ten percent of their mean to be determined by the method approved by the state toxicologist;

(vii) The result of the test of the liquid simulator solution external standard or dry gas external standard result did lie between .072 to .088 inclusive; and

(viii) All blank tests gave results of .000.

RCW 46.61.506(4)(a).

[8] The district court even acknowledged that Ballow and Fausto were advocating a higher standard than the usual requirements of accuracy and reliability.

[9] ER 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a

P.2d 1304 (1996). Evidence is helpful if it concerns matters beyond the common knowledge of a layperson and does not mislead the jury. State v. Thomas, 123 Wn. App. 771, 778, 98 P.3d 1258 (2004). Courts generally interpret possible helpfulness to the trier of fact broadly and favor admissibility in doubtful cases. Miller v. Likins, 109 Wn. App. 140, 148, 34 P.3d 835 (2001). Essentially, the trial court acts as a gatekeeper and can exclude otherwise admissible evidence if it fails to meet ER 702 standards. Jensen, 158 Wn.2d at 397.

The district court's order included nine pages of findings related to instrument bias, uncertainty calculations, and the WTLD's breath alcohol testing program. The findings are not challenged. For context, however, some of those findings are worth noting here. Every measurement is "uncertain," in that no instrument is infinitely precise or accurate. The concept of measurement uncertainty is similar to the concept of margin of error and expresses the idea that a true value of a measurement can never be known. Even the best instruments yield only an estimate of the true value. Uncertainty indicates a range in which the true value of a measurement is likely to occur. Though there are many methods of estimating uncertainty, the WTLD uses a confidence interval system developed by Gullberg. As an example, a confidence interval calculation for the statutory threshold of 0.15 under RCW 46.61.5055 might look like this: mean BrAC result: 0.1505 (the average of the two required breath test readings); confidence interval: 0.1387 - 0.1608, with a 99 percent confidence level that the true value lies somewhere in that range. A probability can then be calculated that

---

witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

the true value of the test falls below the statutory threshold, in this example, between 0.1387 - 0.1499.

The district court concluded that measurement uncertainty is generally accepted within the scientific community. The State does not dispute that measurement uncertainty is recognized in all sciences and uncertainty measurements may be helpful to the trier of fact in some circumstances. Nor does the State challenge the district court's finding that testing laboratories should estimate measurement uncertainty whenever possible. As such, WTLD now performs confidence interval calculations on every breath testing machine it maintains and makes all such results available to the public.

However, the district court concluded that without this confidence interval, a breath alcohol measurement is incomplete and therefore inherently misleading and unhelpful to the trier of fact in every case. This conclusion is fatally flawed. To properly reach this result, the district court would have needed to conclude that BrAC results without confidence intervals are not generally accepted within the relevant scientific community. However, BrAC results without confidence intervals are generally accepted in the forensic toxicology community. In fact, measurement uncertainty reporting is almost nonexistent in the context of these cases. Indeed, the WTLD is unique in that regard. Neither Couper nor Gullberg knew of another breath test program in the country that offers a measurement of uncertainty. Sklerov likewise testified that there is little consensus in the forensic toxicology community on how to even calculate or report uncertainty measurements. At the time of the 2010 hearing, only two scientific

8

publications discussed calculating uncertainty for breath tests—both of which were written by Gullberg. The district court's findings reflect this testimony.

In essence, the district court implicitly concluded the BrAC test results without the accompanying confidence interval failed the Frye test in every case. But, when the court excludes evidence under ER 702, it must exercise that discretion on the facts of a particular case. Jensen, 158 Wn.2d at 398-99; State v. Willis, 151 Wn.2d 255, 262, 87 P.3d 1164 (2004) ("The admissibility of expert testimony is governed by ER 702 and requires a case by case inquiry."). Without a confidence interval, test results obtained in conformance with the WTLD and statutory quality assurance procedures remain the best estimate of the measurement's true value.

The petitioners nevertheless assert that a confidence interval is necessary to understand a BrAC test result, just like a probability estimate is necessary to understand a DNA (deoxyriboneucleic acid) match. They are wrong. In Cauthron, the Washington Supreme Court held that DNA typing under the restricted fragment length polymorphisms (RFLP) procedure was generally accepted in the scientific community and met the Frye test for admissibility. 120 Wn.2d at 899. Each individual, with the exception of identical twins, has a unique DNA structure, which is contained in every nucleated cell. Id. at 892. All scientists agree that if autorads (autoradiograph of a sample in RFLP testing) are distinguishable, then they do not come from the same individual. Id. at 893, 900. But, DNA "matches" cannot be interpreted without knowledge of how often a match might be expected to occur in the general population. Id. This is so, because RFLP does not test the whole DNA strand; but rather focuses on specific locations, so absolute identification is impossible. Id. As such, "'[t]o say that

9

two patterns match, without providing any scientifically valid estimate (or, at least, an upper bound) of the frequency with which such matches might occur by chance, is meaningless.'" Id. at 907 (quoting Committee on DNA Technology in Forensic Science, DNA Technology in Forensic Science 74 (National Academy Press (1992)). DNA match testimony without a population probability estimate is neither generally accepted in the relevant scientific community nor helpful to the trier of fact. Id. Therefore, the court held that evidence of a DNA "match" may not be introduced without a probability estimate. Id. This failure to satisfy Frye clearly distinguishes the rejected DNA testimony from the BrAC test results in this case.

Moreover, it is well supported in case law that if a scientific test is generally accepted by the relevant scientific community, lack of certainty goes to weight rather than admissibility. State v. Stenson, 132 Wn.2d 668, 717-18, 940 P.2d 1239 (1997) (uncertainty of presumptive phenol test for detecting human blood went to weight rather than admissibility); State v. Lord, 117 Wn.2d 829, 853, 822 P.2d 177 (1991). Similarly, unless errors rates are so serious as to be unhelpful to the trier of fact, error rates go to weight, not admissibility. Copeland, 130 Wn.2d at 270; see also Straka, 116 Wn.2d at 875. In State v. Keller, the court applied this principal to Breathalyzer tests. 36 Wn. App. 110, 113, 672 P.2d 412 (1983). In that case, the defendant argued there was insufficient evidence to support his DUI conviction, because the Breathalyzer machine had an inherent margin of error of .01 percent. Id. at 111-12. The court rejected this argument, holding that the margin of error went to the weight of the Breathalyzer evidence rather than admissibility. Id. at 113-14.

10

Nothing in RCW 46.61.506 prevents the trial court from exercising its discretion under ER 702 to exclude an unreliable, inaccurate, or erroneous BrAC test result on a case-by-case basis. However, by adopting a blanket exclusion, the district court implicitly imposed a new foundational requirement for BrAC tests admissibility, beyond that required by Frye or RCW 46.61.506(4). This was error. The burden is on defendants, not the State, to present uncertainty evidence challenging BrAC test results. We hold that the superior court properly reversed the district court's decision.

We affirm.

_Appelwick, J._

WE CONCUR:

_____        _____