FILED
COURT OF APPEALS
DIVISION II

2015 FEB 24 AM 9: 25

STATE OF WASHINGTON
BY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44337-6-II |
| Respondent, | |
| v. | |
| LEANNE MICHELLE BECHTEL, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Leanne Bechtel appeals her conviction for second degree murder for the death of her former boyfriend's daughter, AF.[1] She argues that the trial court erred under the *Frye*[2] test and ER 702 by allowing the State's biomechanics expert to testify. She also argues that the trial court erred by allowing the expert to show the jury an illustrative reenactment of Bechtel's account of how AF's injuries occurred and by denying her motion for a new trial on grounds that the jury committed misconduct regarding the playback of a 911 recording admitted into evidence.

We hold that (1) the expert's testimony was based on generally accepted principles in the relevant scientific field, and Bechtel's challenge to his specific conclusions did not implicate the *Frye* test; (2) the trial court did not abuse its discretion by determining that the expert's opinion

---

[1] AF is a minor and is referred to by her initials.

[2] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

was helpful to the jury under ER 702; (3) the trial court did not abuse its discretion by allowing the expert's reenactment as demonstrative evidence; and (4) the trial court did not abuse its discretion by denying Bechtel's motion for a new trial based on alleged juror misconduct. Accordingly, we affirm Bechtel's conviction.

## FACTS

In April 2008, Bechtel lived with her boyfriend, Chris Franks, his two young children, and a large dog. One of those children was AF, a 3-year-old girl. One morning, while Bechtel and AF were home alone, Bechtel called 911 and reported that the dog had knocked AF off a couch, causing AF to hit her head against the ground. Bechtel said that AF was unresponsive, which was soon confirmed by emergency responders. AF was taken to the hospital, where doctors found signs of brain damage, a massive skull fracture, intracranial bleeding, and severe cerebral swelling. Bechtel repeated the story about the dog knocking AF off the couch to Franks, doctors, a social worker, and the police. AF died as a result of her injuries.

The doctors who treated AF suspected that her injuries were not caused by accidental contact with a dog. Even while AF was in the hospital, police were investigating the possibility of child abuse by interviewing Bechtel and searching the apartment. Nearly three years later, the State charged Bechtel with second degree murder on a felony murder theory stemming from assault of a child.

Throughout the resulting trial, Bechtel maintained through her attorney that her story about the dog knocking AF from the couch was true. Bechtel argued that her story was at least plausible enough to give rise to reasonable doubt that she harmed AF. However, Bechtel did not testify at trial.

2

Because the State had no direct evidence that Bechtel assaulted AF, the State relied heavily on expert testimony at trial. One of the State's experts was biomechanics professor Dr. Wilson Hayes, who held an opinion that AF's injuries were caused by a tremendous impact, one much stronger than would be expected to result from even an accelerated fall from a couch.[3]

Bechtel moved pretrial to exclude Hayes' testimony on grounds that it was unhelpful and unduly prejudicial. In the alternative, Bechtel requested that the trial court hold a *Frye* hearing to determine whether Hayes' methods were reliable. The trial court declined to conduct a *Frye* hearing and ruled that Hayes could testify as to the biomechanics of the defense theory of events. But the trial court excluded under ER 702 testimony on a concept Hayes called the "factor of risk," which quantified whether a particular injury was more probable than not under certain conditions. Report of Proceedings at 167.

At trial, Hayes testified as to whether the events Bechtel described could produce AF's injuries. He reconstructed the events using Bechtel's account to police, the laws of physics, and studies of the forces required to produce certain injuries in adult populations. He compared those reconstructed events to AF's documented injuries. He used slides to visually demonstrate his analysis to the jury, and the slides included illustrations of his reconstructions. He ultimately testified that in his opinion, Bechtel's version of events was incompatible with AF's documented injuries. On cross-examination, Bechtel attacked Hayes' analysis, focusing especially on the potential issues with using general population data in his analysis.

---

[3] The State also called as witnesses at trial the physicians in AF's treating medical team, the physician who conducted AF's autopsy, and a renowned forensic pathologist from Philadelphia. These experts also believed that AF's injuries were inconsistent with Bechtel's version of the incident.

The defense called its own biomechanics expert, Dr. Colin Daly. Daly testified that Hayes used formulae and tests commonly used in the field of biomechanics, but also that Hayes erred in his application of those formulae and tests. Daly admitted that Hayes had based his analysis on data generally accepted in the field of biomechanics. But Daly challenged the accuracy of Hayes' analysis.

After closing arguments, the parties agreed that the jury could listen to an audio recording of Bechtel's 911 call during deliberations. The trial court arranged to have the recording played in the courtroom adjacent to the jury deliberation room, but closed the courtroom to everyone except the jurors. The door remained open between the courtroom and the jury deliberation room during playback.

Following deliberations, the jury found Bechtel guilty as charged. After the jury delivered its verdict, Bechtel's counsel spoke with jurors who stated that some jurors were in the courtroom and some were in the jury deliberation room during playback of the 911 recording. Bechtel moved for a new trial based on her attorney's affidavit describing what the jurors told him. The trial court denied the motion.

Bechtel appeals her conviction and the trial court's denial of her motion for a new trial.

ANALYSIS

A. ADMISSIBILITY OF EXPERT TESTIMONY

Bechtel concedes that Hayes was a qualified expert in the field of biomechanics. However, she argues that the trial court erred in admitting his testimony regarding the likelihood that AF's injuries were caused by being knocked off the couch by the dog because (1) Hayes'

opinions were not generally accepted in the scientific community, and (2) the testimony was not helpful to the jury and therefore was inadmissible under ER 702. We reject both arguments.

### 1. General Principles

Expert testimony generally is admissible if (1) the witness is qualified as an expert, (2) the expert relies on theories that are generally accepted in the scientific community, and (3) the testimony would be helpful to the trier of fact. *Johnston-Forbes v. Matsunaga*, 181 Wn.2d 346, 352, 333 P.3d 388 (2014). The second requirement involves application of the *Frye* test, and the third requirement involves application of ER 702. *See Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 918, 296 P.3d 860 (2013).

The *Frye* test and ER 702 address different aspects of admissibility, but work together to regulate expert testimony. "*Frye* excludes testimony based on novel scientific methodology until a scientific consensus decides the methodology is reliable; ER 702 excludes testimony where the expert fails to adhere to that reliable methodology." *Lakey*, 176 Wn.2d at 918-19.

### 2. General Acceptance of Expert's Theories

Bechtel argues that Hayes formed his opinion using methodologies not generally accepted in the field of biomechanics. Therefore, she argues that the trial court should have excluded his testimony based on a *Frye* analysis. We disagree.

### a. Application of *Frye*

If an expert's testimony is based on a novel scientific theory, trial courts employ the *Frye* test to determine whether the testimony is admissible. *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 600-02, 260 P.3d 857 (2011). Under this test, the trial court determines whether

the theory and the underlying methodology have been generally accepted in the relevant scientific community. *Id.* at 601, 603.

However, the *Frye* test focuses on general scientific theories, not particular opinions based on those theories. Our Supreme Court has emphasized that "*Frye* does not require every deduction drawn from generally accepted theories to be generally accepted." *Anderson*, 172 Wn.2d at 611. If an expert's specific opinions are grounded in generally accepted science, *Frye* is not implicated. *Id.* at 611-12. "[T]he application of accepted techniques to reach novel conclusions does not raise *Frye* concerns." *Lakey*, 176 Wn.2d at 919.

We review de novo questions of admissibility under *Frye*. *Anderson*, 172 Wn.2d at 600. We also review de novo a trial court's denial of a *Frye* hearing, because denial of the hearing is tantamount to a decision that the *Frye* test either has been satisfied or does not apply as a matter of law. *In re Det. of Berry*, 160 Wn. App. 374, 378, 248 P.3d 592 (2011).

b. Opinions Based on Biomechanics

Biomechanics analysis is commonly accepted by Washington courts, and the underlying science is not novel. *See, e.g., Johnston-Forbes*, 181 Wn.2d at 353; *Ma'ele v. Arrington*, 111 Wn. App. 557, 560-61, 45 P.3d 557 (2002). And Hayes based his analysis on biomechanics studies and the laws of physics, all of which are generally accepted in the field of biomechanics.

Bechtel argues that even if the general biomechanical analysis Hayes used to determine the connection between impact force and injuries is generally accepted in the scientific community, Hayes' methodology in this case is not generally accepted as required under *Frye*. Br of Appellant at 24. Specifically, Bechtel focuses on Hayes' use of adult skull force tolerance data to render opinions regarding the effect of force on a young child's skull. Bechtel points out

6

that some biomechanics researchers have warned against drawing conclusions about pediatric

injuries from data traditionally used to assess adult injuries. She argues that major limitations

exist when comparing adult skulls to pediatric skulls and that the literature indicates that the

mechanical properties of pediatric skulls are unknown.[4] Therefore, Bechtel claims that opinions

based on a biomechanical analysis involving a pediatric skull cannot be made with scientific

certainty.

However, Hayes testified that his methodology for developing his opinions was grounded

in settled biomechanics principles. Because there is insufficient data on the force tolerance of

pediatric skulls, Hayes derived his data by scaling available adult data, "accounting for

geometric and material property differences specific to cranial sutures"[5] at different ages.

Clerk's Papers at 167.

In his report, Hayes cited to a biomechanics textbook that describes in detail those

geometric and property differences at the various stages of skull development and outlines the

methods used to scale the data. *See* Narayan Yoganandan et al., *Pediatric Biomechanics, in*

ACCIDENTAL INJURY: BIOMECHANICS AND PREVENTION, 564-579 (Alan M. Nahum & John W.

Melvin eds., 2000). Bechtel has not shown that Hayes' scaling methods departed from the

---

[4] Bechtel similarly argues that Hayes inappropriately incorporated into his analysis data from studies that included potentially relevant design limitations. But Bechtel does not question the principles and techniques underlying those studies or their use in biomechanics analyses generally. Instead, she again claims that Hayes' use of the resulting data in this particular case was inappropriate. This argument does not implicate *Frye*.

[5] Cranial sutures are the fibrous spaces between the plates on a child's developing skull that ossify with age.

methodology described in that textbook.[6] Other literature Hayes cited in his report explains that scaling is an accepted technique in the field of biomechanics. *See, e.g.,* Michael T. Prange et al., *Mechanical Properties and Anthropometry of the Human Infant Head*, 48 STAPP CAR CRASH J. 1, 2 (2004) ("Because of [the] paucity of pediatric data, scaling methods have been employed to determine the head injury tolerance of the child based on adult data."). The record does not show that Hayes' scaling methods departed from standard practices in his field.

In effect, Bechtel's argument is that because of the lack of data regarding the effect of force on a child's skull, there is a risk that Hayes' opinions were unreliable. But issues with the adequacy of particular data are properly addressed under ER 702, not *Frye*. *See State v. Gregory*, 158 Wn.2d 759, 829-30, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R., Jr.*, 181 Wn.2d 757, 336 P.3d 1134 (2014). And "[i]f the methodology is sufficiently accepted in the scientific community at large, concerns about the possibility of error or mistakes made in the case at hand can be argued to the factfinder." *State v. Russell*, 125 Wn.2d 24, 41, 882 P.2d 747 (1994).

Because the methods and principles underlying Dr. Hayes' analysis were not novel, we hold that the *Frye* test was inapplicable. Therefore, we affirm the trial court's denial of Bechtel's motions for a *Frye* hearing and to exclude Hayes' expert testimony.

---

[6] Bechtel points out that this same textbook warns that there are significant limitations to the use of age scaling and that pediatric data may be too sparse to draw firm conclusions in individual cases. But because the techniques and principles of age scaling are not novel, this argument does not implicate *Frye*. Instead, it relates either to admissibility under ER 702 or the weight of the evidence.

8

### 3. Admissibility Under ER 702

Bechtel argues that Hayes' testimony was not helpful to the jury. Therefore, she argues that the trial court should have excluded his testimony under ER 702. We disagree.

#### a. General Principles

ER 702 generally governs the admissibility of expert testimony. *Anderson*, 172 Wn.2d at 600. ER 702 provides that testimony based on "scientific, technical, or other specialized knowledge" is admissible if the trial court determines that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Accordingly, expert testimony usually is admissible under ER 702 if it will be "helpful to the jury in understanding matters outside the competence of ordinary lay persons." *Anderson*, 172 Wn.2d at 600.

On the other hand, "[b]efore allowing an expert to render an opinion, the trial court must find that there is an adequate foundation so that an opinion is not mere speculation, conjecture, or misleading." *Johnston-Forbes*, 181 Wn.2d at 357. Conclusory or speculative opinions that lack adequate foundation will not assist the jury and must be excluded. *Stedman v. Cooper*, 172 Wn. App. 9, 16, 292 P.3d 764 (2012).

Trial courts have broad discretion to determine the circumstances under which expert testimony will be allowed. *Johnston-Forbes*, 181 Wn.2d at 354. Accordingly, we review the trial court's decision whether to admit expert testimony under ER 702 for an abuse of discretion. *State v. Green*, 182 Wn. App. 133, 146, 328 P.3d 988, *review denied*, 337 P.3d 325 (2014). As long as helpfulness is fairly debatable, a trial court does not abuse its discretion by allowing an expert to testify. *Miller v. Likins*, 109 Wn. App. 140, 147, 34 P.3d 835 (2001). And even where the helpfulness of expert testimony is doubtful, courts favor admissibility. *State v. King County*

*Dist. Court W. Div.*, 175 Wn. App. 630, 638, 307 P.3d 765, *review denied*, 179 Wn.2d 1006 (2013).

Determining the admissibility of expert testimony depends upon the specific facts of each case. *Johnston-Forbes*, 181 Wn.2d at 354. And "[t]he broad standard of abuse of discretion means that courts can reasonably reach different conclusions about whether, and to what extent, an expert's testimony will be helpful to the jury in a particular case." *Stedman*, 172 Wn. App. at 18.

### b. ER 702 Analysis

Bechtel challenges the helpfulness of Hayes' testimony on four general grounds: that Hayes' opinion (1) was based on speculation, (2) misleadingly drew conclusions about individual circumstances from generalized population data, (3) was based on unreliable scaling techniques, and (4) commented on Bechtel's credibility.

### i. Opinion Based on Speculation

Bechtel argues that Hayes' opinions were based on approximations and assumptions instead of established facts. According to Bechtel, Hayes' opinion was improperly speculative because important variables, such as the dog's running speed and the exact location at which AF's body came to rest on the floor, were unknown. But Hayes testified as to how he reconstructed those unknown variables from other evidence, including photographs and diagrams of the crime scene and studies of animal movement and motor vehicle accidents. He also explained the effects of using plausible alternative values for those variables, in effect describing a variety of related hypothetical scenarios. For each such scenario, Hayes' ultimate opinion was

the same – the defense's story of the events leading to AF's injuries was incompatible with the causation of those injuries.

Hayes did not rely on pure speculation to produce any of the variables in his analysis. He constructed hypothetical scenarios based on known facts, the defense theory of events, and the results of scientific studies. We hold that Hayes' opinion was not founded on mere speculation, and that the trial court did not abuse its discretion in determining that there was a proper factual foundation for his testimony.

ii.    Use of Generalized Population Data

Bechtel argues that some of the studies on which Hayes relied involved generalized population data even though variability exists among individuals, and therefore that Hayes' testimony was misleading. Courts may exclude evidence that is likely to mislead the jury, and the trial court in this case *could* have excluded Hayes' testimony on these grounds without abusing its discretion. *See Stedman*, 172 Wn. App. at 21. In *Stedman*, Division One of our court held that a biomechanics expert's opinion formed using generalized population data derived from studies of differing subjects can mislead the jury, and that a trial court "may regard such an opinion as more likely to be misleading than helpful." 172 Wn. App. at 20-21. However, the court in *Stedman* did not hold that a trial court *must* – or even should – regard such an opinion as unduly misleading.

Bechtel essentially argues that we should go further than the *Stedman* court and find that a trial court abuses its discretion as a matter of law by allowing expert testimony based upon generalized population data. We decline to broaden the *Stedman* rule as Bechtel suggests.

11

### iii.    Reliability of Scaling Techniques

Bechtel argues that Hayes unreliably scaled data from experiments involving adult skulls to render opinions regarding the effect of force on a young child's skull, even though the mechanical properties of the pediatric skull have not been fully studied. She claims that the limitations inherent in the use of scaled data renders Hayes' opinions unhelpful. *See Gregory*, 158 Wn.2d at 830.

As with the use of generalized population data, the trial court reasonably *could* have excluded Hayes' expert testimony based on the scaled data due to the limitations noted in the scholarly literature. *See Stedman*, 172 Wn. App. at 21; *see also, e.g.,* Yoganandan et al., *Pediatric Biomechanics*, at 576. Bechtel quotes a number of passages discussing the limitations inherent to age scaling techniques. But these sorts of limitations are not so severe as to make the resulting analysis unhelpful beyond any fair debate. In fact, the literature before us shows that scaling adult data produces fairly accurate results. *See, e.g.*, Prange et al., *Mechanical Properties and Anthropometry of the Human Infant Head*, at 14. Because the helpfulness of the scaled data was at least fairly debatable when the trial court ruled it admissible, we reject this argument.

### iv.    Expert Opinion on Defendant's Credibility

Bechtel argues that Hayes' testimony should have been excluded because it improperly addressed Bechtel's credibility. Expert testimony that comments on the credibility of a witness impermissibly invades the jury's fact finding function. *Green*, 182 Wn. App. at 147; *see also State v. Fitzgerald*, 39 Wn. App. 652, 657, 694 P.2d 1117 (1985) ("It is improper for an expert to base an opinion about an ultimate issue of fact solely on the expert's determination of a witness's

veracity."); 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 704.10, at 284-285 (5th ed. 2007).

The cases Bechtel cites for this argument involved witnesses actually testifying as to the guilt of a defendant. *See State v. Black*, 109 Wn.2d 336, 349, 745 P.2d 12 (1987); *State v. Garrison*, 71 Wn.2d 312, 315, 427 P.2d 1012 (1967). But Hayes testified only that the story of events presented by the defense was incompatible with AF's injuries. He did not comment, directly or indirectly, on any particular witness's credibility. Therefore, the trial court was not obligated to exclude Hayes' testimony on that basis.

We hold that the trial court did not abuse its discretion by declining to exclude Hayes' expert testimony under ER 702.

B.     USE OF DEMONSTRATIVE EVIDENCE

Bechtel argues that the trial court abused its discretion by allowing Hayes to show the jury an animated reenactment demonstrating the factual scenario he analyzed. She claims that the information he used to create the reenactment was unreliable and the demonstrative evidence was speculative, and therefore the potential prejudicial effect of the reenactment exceeded its probative value. We disagree.

A trial court may admit demonstrative evidence as long as the experimental conditions are substantially similar to the facts of the case and the probative value of the evidence outweighs its prejudicial effect. *State v. Hultenschmidt*, 125 Wn. App. 259, 268, 102 P.3d 192 (2004). Where any differences between the facts of the case and the demonstrative evidence are made clear at trial, a trial court may allow a witness to use that evidence. *Jones v. Halvorson-Berg*, 69 Wn. App. 117, 126-27, 847 P.2d 945 (1993). Any dissimilarity ultimately goes to the

13

weight of the evidence. *State v. Finch*, 137 Wn.2d 792, 816, 975 P.2d 967 (1999). We review the trial court's decision to allow demonstrative evidence under an abuse of discretion standard. *State v. Hunter*, 152 Wn. App. 30, 41, 216 P.3d 421 (2009).

Bechtel asserts that the information underlying Hayes' analysis may not have been substantially similar to the facts of the case, and therefore that the demonstrative evidence was misleading. Because Hayes' presentation illustrated the hypothetical scenario he analyzed, and was not a reenactment of known events, it included elements not established by other evidence in the case. But Hayes explained his inclusion of these elements and the sources and methods he used to construct them. In context, there was little risk of confusion as to what the slides showed. And the slides had value to the jury as it followed Hayes' highly technical testimony. The presentation's prejudicial effect was minimal, but its demonstrative value was high.

We hold that the trial court did not abuse its discretion by finding that the probative value of the slides outweighed the prejudicial effect and potential to mislead the jury.

C.    JUROR MISCONDUCT

Bechtel argues that the trial court abused its discretion by denying her motion for a new trial based on juror misconduct. She argues that the trial court should have granted the motion because the jury (1) violated RCW 4.44.300 and (2) improperly emphasized the 911 call to the exclusion of other evidence. We disagree with both arguments.

CrR 7.5(a)(2) allows a trial court to grant a new trial because of jury misconduct. However, a new trial is warranted only when the defendant has been so prejudiced that only a new trial can insure that the defendant has been fairly tried. *State v. Bourgeois*, 133 Wn.2d 389, 406, 945 P.2d 1120 (1997). We review for an abuse of discretion a trial court's denial of a

14

motion for a new trial. *State v. Pete*, 152 Wn.2d 546, 552, 98 P.3d 803 (2004). A trial court abuses its discretion by reaching a conclusion no reasonable judge would reach. *Id.* We will reverse a trial court's denial of a new trial motion only where the moving party clearly shows that the trial court abused its discretion. *Id.*

1.    Violation of RCW 4.44.300

Bechtel argues that the jury violated RCW 4.44.300 by separating during deliberations without the court's approval. We hold that Bechtel did not show that the jury separated.

RCW 4.44.300 provides that:

Unless the members of a deliberating jury are allowed to separate, they must be kept together in a room provided for them, or some other convenient place under the charge of one or more officers, until they agree upon their verdict, or are discharged by the court.

If the jury separates during deliberations in a criminal case in violation of RCW 4.44.300, the defendant is presumptively prejudiced. *State v. Smalls*, 99 Wn.2d 755, 766, 665 P.2d 384 (1983). If the State cannot rebut the presumption of prejudice, the trial court must grant the defendant a new trial. *Id.* at 767.

Here, during playback of the 911 recording, some of the jurors were in the courtroom and some were in the adjacent jury deliberation room. Bechtel argues that this constituted separation of a deliberating jury within the meaning of RCW 4.44.300. However, the record indicates that the trial court essentially expanded the jury deliberation room to include the courtroom for purposes of playing the 911 recording. Only the jurors were allowed in the courtroom and the door between the two rooms remained open throughout the playback of the 911 recording. Based on these facts, the trial court found that for the duration of the playback the two rooms

15

were effectively a single jury deliberation room within the meaning of RCW 4.44.300. In addition, there is no evidence the jurors deliberated in separate groups or discussed the case at all during the playback of the recording.

We hold that the courtroom was effectively an extension of the jury deliberation room during the playback of the 911 recording, and therefore the jury did not separate during deliberations. Accordingly, we hold that the jury did not violate RCW 4.44.300 and the trial court did not abuse its discretion in denying Bechtel's motion for a new trial on this basis.

2. Improper Emphasis

Bechtel argues that the jury committed misconduct because having only a few jurors listen to the 911 recording allowed those jurors to improperly emphasize that recording. We disagree.

In general, a trial court may not inquire into the mental processes of deliberating jurors, including the weight given to any particular evidence. *State v. Jackman*, 113 Wn.2d 772, 777-78, 783 P.2d 580 (1989). Admitted evidence may be used by a deliberating jury as it sees fit. *State v. Elmore*, 139 Wn.2d 250, 294-95, 985 P.2d 289 (1999); *State v. Castellanos*, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997).

Bechtel relies on *State v. Koontz*, in which our Supreme Court held that a trial court abused its discretion by allowing a deliberating jury to view video recorded testimony without taking precautions to ensure that the jury would not unduly emphasize the testimony.[7] 145

---

[7] Bechtel seems to argue that that the jury did not follow the court's instructions intended to minimize undue emphasis. But the record does not show that the trial court actually instructed the jurors that they had to remain in the courtroom during playback. Therefore, Bechtel cannot show that the jurors committed misconduct by failing to follow the court's instructions.

16

Wn.2d 650, 660, 41 P.3d 475 (2002). But as the court in *Koontz* made clear, a jury may emphasize *admitted* recordings – as opposed to recorded *testimony* – as it wishes. 145 Wn.2d at 659; *see also State v. Oughton*, 26 Wn. App. 74, 82, 612 P.2d 812 (1980) (holding that admitted audio recordings must be made available to the jury for review during deliberations).

Here, the 911 audio recording was admitted, so jurors were free to review it as they deemed appropriate. As a result, the jurors who chose not to listen to the 911 recording did not commit misconduct, and the trial court did not abuse its discretion in denying Bechtel's motion for a new trial on that basis.

We affirm Bechtel's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, C.J.

LEE, J.