IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

|  |  |  |
|---|---|---|
| In re the Detention of: | ) | No. 30845-6-III |
|  | ) |  |
| STEVEN G. RITTER, | ) |  |
|  | ) |  |
| Appellant, | ) |  |
| v. | ) | PUBLISHED OPINION |
|  | ) |  |
| STATE OF WASHINGTON, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

BROWN, J. — Steven G. Ritter appeals his involuntary commitment as a sexually violent predator (SVP). He contends, among other things, that the trial court should have held a *Frye*[1] hearing on a predictive tool, the forensic version of the Structured Risk Assessment (SRA-FV). Because we agree with him, we exercise our discretion to "take any other action as the merits of the case and the interest of justice may require." RAP 12.2; *see* RAP 12.3(b). We remand solely for the trial court to hold a *Frye* hearing on the SRA-FV and to enter factual findings and legal conclusions for our review. We retain jurisdiction over the remaining issues and allow supplemental briefing concerning the outcome of the *Frye* hearing.

---

[1] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

FACTS

After committing various sexual assaults between ages 14 and 19, Mr. Ritter eventually pleaded guilty to first degree child molestation. He spent about seven years in prison, where he was diagnosed with pedophilia and antisocial personality disorder. Then, in February 2007, the State petitioned to involuntarily commit Mr. Ritter as an SVP.

In July 2006 and November 2009, Dale R. Arnold, PhD, wrote reports concluding Mr. Ritter met all SVP criteria. Dr. Arnold applied actuarial instruments, including the revised Static-99 (Static-99R), the revised Static-2002 (Static-2002R), and the revised Minnesota Sex Offender Screening Tool (MnSOST-R), to Mr. Ritter's static risk factors; additionally, Dr. Arnold applied his clinical judgment to Mr. Ritter's stable dynamic risk factors.[2] In November 2011, Dr. Arnold revised his prior reports to incorporate the SRA-FV as a tool structuring his clinical judgment of Mr. Ritter's stable dynamic risk factors.

Mr. Ritter unsuccessfully challenged the SRA-FV in a motion in limine citing *Frye*. Without holding a *Frye* hearing, the court concluded upon the briefing and argument that the SRA-FV satisfied *Frye* as either an actuarial or clinical prediction of future dangerousness. At a jury trial in January 2012, the State relied upon evidence of Mr. Ritter's juvenile and adult conduct; his diagnosed pedophilia and antisocial personality disorder; and predictions of his future dangerousness derived from the Static-99R, Static-2002R, and SRA-FV. The trial court ordered Mr. Ritter's commitment after the unanimous jury found he met all SVP criteria. He appealed.

---

[2] See *infra* note 7 for the definitions of static and stable dynamic risk factors.

No. 30845-6-III
*In re Det. of Ritter*

ANALYSIS

The issue is whether the trial court should have held a *Frye* hearing on the SRA-FV before allowing Dr. Arnold to use it at trial. Mr. Ritter contends this predictive tool does not satisfy *Frye*.[3] We review evidence admission under *Frye* de novo. *State v. Baity*, 140 Wn.2d 1, 9-10, 991 P.2d 1151 (2000). In determining if novel scientific evidence satisfies *Frye*, we perform "a searching review which may extend beyond the record and involve consideration of scientific literature as well as secondary legal authority." *State v. Copeland*, 130 Wn.2d 244, 255-56, 922 P.2d 1304 (1996) (citing *State v. Cauthron*, 120 Wn.2d 879, 887-88, 846 P.2d 502 (1993)).

Under *Frye*, "evidence deriving from a scientific theory or principle is admissible only if that theory or principle has achieved general acceptance in the relevant scientific community." *State v. Martin*, 101 Wn.2d 713, 719, 684 P.2d 651 (1984). "The core concern of *Frye* is only whether the evidence being offered is based on established scientific methodology." *Cauthron*, 120 Wn.2d at 889. Because both actuarial and clinical predictions of future dangerousness satisfy *Frye*, they are admissible without a *Frye* hearing if they satisfy ER 401 through 403 and ER 702 through 703. *See Thorell*, 149 Wn.2d at 754-56, 758.

Mr. Ritter argues the SRA-FV does not satisfy *Frye* because it is not based on

---

[3] Our Supreme Court adopted the *Frye* test for determining admissibility of novel scientific evidence. *State v. Martin*, 101 Wn.2d 713, 719, 684 P.2d 651 (1984); *see also State v. Riker*, 123 Wn.2d 351, 360 n.1, 869 P.2d 43 (1994) (reaffirming the *Frye* test in a criminal case despite *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)); *Young*, 122 Wn.2d at 56 (applying the *Frye* test in an SVP commitment after *Daubert*); *Thorell*, 149 Wn.2d at 754 (same).

3

established scientific methodology and has not achieved general acceptance in the scientific community predicting future dangerousness. The SRA-FV is a structured clinical judgment tool for evaluating "stable dynamic risk factors" and integrating them with "static risk factors" considered by actuarial instruments.[4] Clerk's Papers (CP) at 47, 785, 968; Report of Proceedings (RP) at 592, 782-83.[5] *See generally* RAYMOND A. KNIGHT & DAVID THORNTON, EVALUATING AND IMPROVING RISK ASSESSMENT SCHEMES FOR SEXUAL RECIDIVISM 18-19 (Nat'l Inst. of Justice, U.S. Dep't of Justice Document No. NCJ 217618, 2007) ("In general, [structured risk assessment] is better conceptualized as a heuristic framework that can be used to guide the selection and organization of variables from any relevant data set."). Thus, a prediction of future dangerousness based on the SRA-FV is neither purely actuarial nor purely clinical.

By our research, structured risk assessment originated in April 2002. David Thornton, *Constructing and Testing a Framework for Dynamic Risk Assessment*, 14 SEXUAL ABUSE: J. RES. & TREATMENT 139 (2002). A forensic version emerged as the

---

[4] Risk factors are either static, which are unchangeable, or dynamic, which are changeable; dynamic risk factors are either stable, which can change slowly, or acute, which can change quickly. The SRA-FV considers three domains of stable dynamic risk factors: "Sexual Interests," "Relational Style," and "Self-Management." CP at 670, 786; RP at 992. The sexual interests domain includes "Sexual preferences for children," "Sexualized violence," and "Sexual preoccupation." CP at 670. The relational style domain includes "Emotional congruence with children," "Lack of emotionally intimate relationships [with adults]," "Callousness," and "Grievance thinking." CP at 670. The self-management domain includes "Lifestyle impulsivity," "Resistance to rules [and] supervision," and "Dysfunctional coping." CP at 670.

[5] Unless otherwise noted, all citations to the Report of Proceedings reference the transcript of the jury trial held between January 11 and 26, 2012.

4

"SRA Need Assessment" in March 2007 and became known as the "SRA-FV" in October 2009 and December 2010. KNIGHT & THORNTON, *supra, passim*; David Thornton & Raymond A. Knight, Using SRA Need Domains Based on Structured Judgment to Revise Relative Risk Assessments Based on Static-2002 and Risk Matrix 2000, Presentation at the 28th Annual Research and Treatment Conference of the Ass'n for the Treatment of Sexual Abusers (Oct. 1, 2009); David Thornton, Structured Risk Assessment: Using the Forensic Version of the SRA in Sex Offender Risk Assessment, Presentation at a Workshop By Cent. Coast Clinical & Forensic Psychology Servs. (Dec. 2, 2010).

The SRA-FV has been presented at professional conferences and is expected to be published soon in a peer-reviewed journal titled *Sexual Abuse: A Journal of Research and Treatment*. Meanwhile, Mr. Ritter's expert witness, Richard Wollert, PhD, has criticized an assumption underlying structured risk assessment. Richard Wollert & Elliot Cramer, *The Constant Multiplier Assumption Misestimates Long-Term Sex Offender Recidivism Rates*, 36 LAW & HUM. BEHAV. 390 (2012).

In February 2011, California adopted the SRA-FV as its official dynamic risk assessment instrument for evaluating sex offenders' future dangerousness. Letter from Janet Neely, Deputy Att'y Gen. of Cal., on Behalf of the Cal. State Authorized Risk Assessment Tool for Sex Offenders Comm., to Jerry Brown, Governor of Cal. (Feb. 25, 2011); *see* CAL. PENAL CODE §§ 290.04, .09. But in September 2013, California switched to the Stable-2007/Acute-2007 for unspecified reasons. *Risk Assessment*

*Instruments*, CAL. STATE AUTHORIZED RISK ASSESSMENT TOOL FOR SEX OFFENDERS

COMM., http://saratso.org/index.cfm?pid=467 (last visited Oct. 22, 2013).

Nonetheless, the SRA-FV may be a viable tool structuring clinical judgment of

stable dynamic risk factors in Washington. *See* Amy Phenix, Current Research on

Assessing the Risk of Sexual Offenders, Presentation at the Annual Conference of the

Wash. Ass'n for the Treatment of Sexual Abusers (Feb. 23, 2013) (presentation slides

available at WASH. ASS'N FOR THE TREATMENT OF SEXUAL ABUSERS, http://www.watsa.org/

Resources/Documents/4.Phenix%20Handouts%202-23-13.pdf (last visited Oct. 22,

2013)).

We have found no published state or federal judicial opinion addressing the

admissibility of the SRA-FV or any similar dynamic risk assessment instrument. Absent

mandatory or persuasive authority, we conclude where an expert witness derives a

prediction of future dangerousness in whole or part from a novel dynamic risk

assessment instrument like the SRA-FV, the trial court must hold a *Frye* hearing on the

instrument before the expert may use it at trial. Here, Dr. Arnold's report said "all of the

instruments Mr. Ritter was rated on are simply tools designed to guide a clinical

opinion." CP at 788. Dr. Arnold's trial testimony confirmed this approach:

> Q. Doctor, . . . would you believe you met commitment criteria to a
> reasonable degree of psychological certainty if you didn't have the
> [instruments] to use?
> A. Yes.
> Q. You would have that confidence today without their usage?
> A. With Mr. Ritter in this case I would.
> Q. So you basically would be relying on your clinical judgment?

A. I would be relying upon a guided empirical approach because I know what factors are related to sexual offender recidivism, and in this case they're quite clear.

RP at 977-78; *see* RP at 764. Contrary to these statements, Dr. Arnold ultimately used the SRA-FV in a mechanical way, assigning Mr. Ritter recidivism probabilities partly based on his domain scores. The bottom line is Dr. Arnold partly derived his prediction of Mr. Ritter's future dangerousness from a novel dynamic risk assessment instrument, the SRA-FV. Therefore, we conclude the trial court should have held a *Frye* hearing on the SRA-FV before allowing Dr. Arnold to use it at trial. Considering our analysis, we do not reach Mr. Ritter's remaining issues at this time.

Remanded for proceedings consistent with this interlocutory decision.

_____
Brown, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Fearing, J.

7