FILED
COURT OF APPEALS
DIVISION II

2015 AUG 11 AM 9: 12

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

IN RE THE DETENTION OF:

JONATHAN PARSONS,

                    Petitioner.

No. 46889-1-II

UNPUBLISHED OPINION

SUTTON, J. — Jonathan Parsons appeals the trial court's order committing him as a sexually violent predator (SVP) to the Special Commitment Center (SCC). He argues that the trial court (1) erred in admitting evidence of his personality disorder in order for the jury to determine whether Parsons suffers from a mental abnormality for civil commitment under chapter 71.09 RCW, (2) erred in admitting testimony under ER 702 by the State's expert on Static-99R and Static-2002R actuarial instruments used to assess sexual recidivism, without first conducting a *Frye*[1] hearing when the expert's methods had not been scientifically validated nor were generally accepted in the relevant scientific community, and (3) abused its discretion and prejudiced him when it precluded the parties from referring to the SCC commitment as "incarceration." Because (1) Parsons failed to object to or strike the personality disorder evidence at trial, (2) the expert's actuarial instruments were not a "novel" scientific method requiring a *Frye* hearing and the expert's testimony was admissible under ER 702, and (3) Parsons fails to show prejudice resulting

---

[1] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

from the trial court's exclusion of the term "incarcerated," we affirm the trial court's order committing him as an SVP to the SCC.

## FACTS

### I. PARSONS'S SEXUALLY VIOLENT OFFENSE HISTORY

On February 27, 2012, the State petitioned to commit Parsons as an SVP under chapter 71.09 RCW based on Parsons's sexually violent offense history. At the age of 14, Parsons committed his first sexually violent offense when he handcuffed and sexually abused an 11-year-old neighbor. Parsons was charged with and pled guilty to first degree child molestation and received 30 days in juvenile detention and 12 months of community supervision. At age 18, he raped a 14-year-old. He was charged with and pled guilty to third degree rape and was sentenced to 18 months in prison and 24 months of community custody. At age 22, while still on community supervision, Parsons sexually assaulted and then, a few days later, raped a 13-year-old boy. He was charged with and pled guilty to second degree child rape and second degree child molestation and was sentenced to 175 months in prison and 36 months of community custody.

### II. PRE-TRIAL RULINGS

The trial court heard testimony by Dr. Putnam, the State's expert, regarding his initial evaluation to determine whether the State had established probable cause that Parsons would engage in predatory sexually violent acts if not confined in a secure facility. The trial court determined that the State met its burden and the case was set for a jury trial.

Parsons filed a *Frye* and ER 702 motion to exclude the opinions of Dr. Putnam. First, Parsons contended that Dr. Putnam's use and reliance on the Structured Risk Assessment-Forensic Version (SRA-FV) was not a scientifically validated actuarial instrument to determine the

likelihood of sexual re-offense, and was therefore unreliable and failed to satisfy ER 702. Parsons also argued that the SRA-FV failed to satisfy *Frye* because it was not generally accepted in the scientific community. Parsons also offered the declaration of Brian Abbott, Ph.D., who concluded that the SRA-FV had not attained general acceptance in the scientific community. Joseph Plaud, Ph.D., who would also testify for Parsons at trial, concluded that peer reviewed studies demonstrated that the SRA-FV was not reliable nor generally accepted in the scientific community.

The trial court, relying on *In re Det. of Ritter*,[2] determined that any testimony regarding the SRA-FV required a *Frye* hearing. Based on the trial court's ruling, the State agreed not to present evidence regarding the SRA-FV.

In Parsons's second *Frye* and ER 702 motion related to Dr. Putnam's placement of Parsons in the "High Risk Need" reference group[3] to measure his likelihood of recidivism, Parsons argued that Dr. Putnam's reliance on logical inference to select Parsons's appropriate reference group using actuarial instruments, the Static-99R and Static 2002R, was not reliable and was not generally accepted in the scientific community. Clerk's Papers (CP) at 148. To support these claims, Parsons included Dr. Abbott's declaration and several scholarly articles criticizing Dr.

---

[2] *In re Det. of Ritter*, 177 Wn. App. 519, 213 P.3d 723 (2013), *review denied,* 180 Wn.2d. 1028 (2014).

[3] Here, a "reference group" is a group of offenders matched based on similar characteristics to provide a representative sample within which the actuarial instrument places the evaluated offender.

Putnam's methodology. The trial court ruled that Dr. Putnam's testimony was admissible under ER 702 and declined to conduct a *Frye* hearing.

The State moved in limine to prohibit the use of the term "incarceration" as not relevant under ER 402 and more prejudicial than probative under ER 403. CP at 947. The trial court precluded the parties from using the term "incarcerated," but allowed the terms "confined" or "detained." CP at 903.

### III. DR. PUTNAM'S TRIAL TESTIMONY

To commit a person as an SVP, the State must prove beyond a reasonable doubt that the person (1) "has been convicted of or charged with a crime of sexual violence," (2) that the respondent "suffers from a mental abnormality or personality disorder," and (3) that such abnormality or disorder "makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18).

"Mental abnormality" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(8). In contrast, a "'[p]ersonality disorder' means an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has onset in adolescence or early adulthood, is stable over time and leads to distress or impairment." RCW 71.09.020(9). And evidence of a personality disorder "must be supported by testimony of a licensed forensic psychologist or psychiatrist." RCW 71.09.020(9).

At trial, the State presented the expert testimony of Dr. Putnam, a licensed psychologist with 15 years of experience evaluating sex offenders. Dr. Putnam reviewed a number of documents, including police reports, psychological evaluations, and Parsons's confinement records; evaluated Parsons in 2010; and updated his evaluation in 2013. Dr. Putnam found that Parsons had a pattern of sexual arousal to the physical or psychological suffering of pubescent boys and a pattern of serious difficulty controlling his sexually violent behavior. He diagnosed Parsons with sexual sadism and personality disorder that includes antisocial, borderline and dependent features. He opined that Parsons's personality disorder interacts with his sexual sadism, causing him serious difficulty controlling his sexual violent behavior, and predisposes him to the commission of criminal sexual acts. Dr. Putnam opined, based on a reasonable degree of psychological certainty, that Parsons's condition was a "mental abnormality." 3 Verbatim Report of Proceedings (VRP) at 340-41.

Dr. Putnam used a Static-99R actuarial risk assessment instrument to score Parsons and scored him as a "high risk category" offender. 3 VRP at 329-30. Dr. Putnam acknowledged that no scientific instrument was available to select Parsons's reference group and that the selection of Parsons's reference group was based on Dr. Putnam's logical inference, but that this was characteristic to the Static-99R actuarial risk assessment instrument. He conceded that no study had ever been conducted that demonstrated this methodology for selecting the reference group was valid or reliable.

Dr. Putnam also incorporated dynamic risk factors into his analysis, which are factors that have been found to relate to sexual recidivism, not included in the static actuarial instruments, but are used as treatment targets in sex offender treatment. His assessment of Parsons's dynamic risk

factors indicated that Parsons had issues with intimacy deficits, poor cooperation with supervision both in the community and in custody, and a high degree of hostility and difficulty managing anger. Dr. Putnam opined that Parsons did not demonstrate much insight into his offender behavior even after participating in sex offender treatment and that his proposed release environment was inadequate. Based on his evaluation, Dr. Putnam opined "that Mr. Parsons, by reason of his mental abnormality, is more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility." CP at 53.

## IV. PARSONS'S TRIAL MOTIONS

After the State rested its case, Parsons moved to exclude Dr. Putnam's opinions regarding the Static-99R and Static 2002R reference groups under ER 702 and *Frye*. The trial court denied the motion.

Parsons also requested that the jury not be instructed on personality disorder as a basis for civil commitment. Parsons relied on Dr. Putnam's testimony that "the personality disorder alone would not have been sufficient" to civilly commit Parsons as an SVP under the criteria of chapter 71.09 RCW. 4 VRP at 417-18. Parsons stated, "That doesn't mean I'm moving to strike any of the testimony about the personality disorder prong. Dr. Putnam talked about it playing into the mental abnormality, but by itself would not be sufficient." 4 VRP at 418.

The State agreed that the jury should not be instructed that personality disorder was a basis to civilly commit Parsons. The trial court excluded references to "personality disorder" in its oral instruction to the jury setting forth the elements that the jury must find to convict Parsons of being an SVP, and instructed the jury to consider whether Parsons had a "mental abnormality" that met the statutory requirements of an SVP. 5 VRP at 645. The jury found, by unanimous verdict, that

No. 46889-1-II

Parsons was an SVP under chapter 71.09 RCW, and the court entered an order committing Parsons as an SVP to the SCC. Parsons appealed.

## ANALYSIS

Parsons argues that (1) the trial court erred in admitting any evidence of his personality disorder because that evidence was not relevant under ER 401 and did not demonstrate whether he suffered from a "mental abnormality" in order to commit him as an SVP, (2) the trial court erred in permitting the State's expert, Dr. Putnam, to rely on Static-99R and Static-2002R actuarial instruments, used in assessing the likelihood of sexual re-offense, without first conducting a *Frye* hearing and erred in admitting the testimony under ER 702 when the expert's methods had not been scientifically validated nor were generally accepted in the relevant scientific community, and (3) the trial court abused its discretion by precluding the parties from referring to Parsons's SCC commitment as "incarceration." CP at 903. We disagree and affirm the trial court's order committing Parsons as an SVP to the SCC.

### I. PERSONALITY DISORDER EVIDENCE

A. ADMISSION OF EVIDENCE

Appellate courts will generally not entertain issues that were not raised at the trial court. *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011). RAP 2.5(a) provides in part:

> The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right.

Although at trial Parsons argued that the State cannot commit him as an SVP based on a personality disorder finding alone, Parsons did not object to, and expressly declined to move to strike Dr.

7

Putnam's testimony about his diagnosis of Parsons's personality disorder. Thus, Parsons failed to preserve this issue for appeal, and we decline to review this issue further.

B. UNANIMITY OF JURY VERDICT

Parsons also argues that, because the trial court admitted personality disorder evidence, it is unclear whether the jury relied impermissibly on the evidence in convicting Parsons, and thus, the State cannot show that the jury unanimously found that Parsons suffered from a mental abnormality. The State responds that Parsons's argument is unsupported because the jury instructions did not provide an option of committing Parsons based on a personality disorder, and only provided an option of committing Parsons based on a finding of mental abnormality.

Although chapter 71.09 RCW allows a jury to make an SVP determination based on either a finding of "mental abnormality" or a "personality disorder," *In re Det. of Halgren*, 156 Wn.2d 795, 810, 132 P.3d 714 (2006), here the parties and the trial court agreed to exclude "personality disorder" as a basis for commitment. 5 VRP at 628. The jury instructions provided "mental abnormality" as the only basis for a commitment finding and did not instruct on a "personality disorder." CP at 925 (Jury Instruction 4). And because we presume the jury followed the court's instructions, we hold that Parsons fails to show that the jury's verdict was not a unanimous finding of a mental abnormality. *State v. Johnson*, 124 Wn.2d 57, 77, 873 P.2d 514 (1994).

II. ADMISSIBILITY OF EXPERT TESTIMONY

Parsons argues that the trial court should have excluded Dr. Putnam's testimony under ER 702, or should have conducted a *Frye* hearing to establish that Dr. Putnam's reference group methodology was generally accepted in the relevant scientific community. The State responds that, in Washington, neither clinical judgment relating to risk assessment nor actuarial instruments

used in those risk assessments are subject to a *Frye* hearing; rather, they are analyzed under ER 702 and 703. *In re Det. of Thorell*, 149 Wn.2d 724, 756, 72 P.3d 708 (2003). The State further argues that Washington courts have already accepted the Static-99R actuarial instrument that Dr. Putnam used, and that such clinical judgment and actuarial instruments relating to risk assessments go to weight, rather than admissibility. Because Dr. Putnam's 2010 opinion was based on the Static-99R and Static-2002R, actuarial instruments that were not novel, and because his opinion was not dependent on SRA-FV, the trial court properly admitted the evidence.

Our review of the admissibility of evidence under *Frye* is de novo, involving a mixed question of law and fact. *In re Det. of Ritter*, 177 Wn. App. 519, 522, 213 P.3d 723 (2013), *review denied*, 180 Wn.2d. 1028 (2014); *State v. Copeland*, 130 Wn.2d 244, 255, 922 P.2d 1304 (1996). A *Frye* hearing is required when a party seeks to admit "evidence based on novel scientific procedures." *In re Pers. Restraint of Young*, 122 Wn.2d 1, 56, 857 P.2d 989 (1993). "The *Frye* test is only implicated where the opinion offered is based upon novel science." *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 611, 260 P.3d 857 (2011). If the evidence does not involve new scientific principles or methods of proof, a *Frye* inquiry is unnecessary. *Acord v. Pettit*, 174 Wn. App. 95, 110, 302 P.3d 1265, *review denied*, 178 Wn.2d 1005 (2013).

After determining that evidence satisfies the *Frye* test, we evaluate the trial court's admission of that evidence under ER 702. *State v. King County Dist. Court. W. Div.*, 175 Wn. App. 630, 637, 307 P.3d 765, *review denied*, *State v. Ballow*, 179 Wn.2d 1006, 315 P.3d 530 (2013). We review the trial court's decision whether to admit expert testimony under ER 702 for an abuse of discretion. *State v. Green*, 182 Wn. App. 133, 146, 328 P.3d 988, *review denied*, 337 P.3d 325 (2014). Expert testimony is admissible under ER 702 "[i]f scientific, technical, or other

specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." ER 702. Such testimony is generally helpful to the trier of fact when "it concerns matters beyond the common knowledge of the average layperson and does not mislead the jury." *State v. Thomas*, 123 Wn. App. 771, 778, 98 P.3d 1258 (2004). As long as helpfulness is fairly debatable, a trial court does not abuse its discretion by allowing an expert to testify. *In re Det. of Coe*, 160 Wn. App. 809, 818, 250 P.3d 1056 (2011). And even where the helpfulness of expert testimony is doubtful, we favor admissibility. *King County Dist. Court*, 175 Wn. App. at 638.

"'[T]he core concern . . . is only whether the evidence being offered is based on established scientific methodology.'" *Thorell*, 149 Wn.2d at 754 (quoting *Young*, 122 Wn.2d at 56). "It applies where either the theory and technique or the method of arriving at the data relied upon is so novel that it is not generally accepted by the relevant scientific community." *Anderson*, 172 Wn.2d at 611. "Once a methodology is accepted in the scientific community, then application of the science to a particular case is a matter of weight and admissibility under ER 702, which allows qualified expert witnesses to testify if scientific, technical, or other specialized knowledge will assist the trier of fact." *Anderson*, 172 Wn.2d at 603 (quoting *State v. Gregory*, 158 Wn.2d 759, 829-30, 147 P.3d 1201 (2006)).

Washington courts have rejected arguments that non-novel comprehensive sex predator risk assessments are subject to a *Frye* hearing. *See Halgren*, 156 Wn.2d at 806; *In re Det. of McGary*, 175 Wn. App. 328, 338, 306 P.3d 1005, *review denied*, 178 Wn.2d 1020 (2013); *In re Det. Berry*, 160 Wn. App. 374, 379, 248 P.3d 592 (2011); *In re Det. of Robinson*, 135 Wn. App. 772, 786, 146 P.3d 451 (2006). And our Supreme Court has upheld the admissibility of expert opinions based purely on the expert's experience, stating, "[M]any expert medical

opinions are pure opinions and are based on experience and training rather than scientific data. We require only that 'medical expert testimony . . . be based upon a reasonable degree of medical certainty' or probability." *Anderson*, 172 Wn.2d at 610 (quoting *McLaughlin v. Cooke*, 112 Wn.2d 829, 836, 774 P.2d 1171 (1989)). Thus, this court's analysis is whether Dr. Putnam's scientific methodology was established, which would not require a separate *Frye* hearing, or whether it was novel. *Thorell*, 149 Wn.2d at 755.

Parsons moved to exclude Dr. Putnam's testimony based on the SRA-FV, Static-99R, and Static-2002R on the grounds that these actuarial instruments were novel techniques that required a *Frye* hearing. We reject Parson's arguments that a *Frye* hearing was required.

Our Supreme Court has embraced actuarial instruments as admissible evidence in predicting future dangerousness or likelihood of re-offense. *Thorell*, 149 Wn.2d at 753, 755. And our courts have specifically admitted expert testimony of the likelihood that a respondent will commit another sexual offense based on Static-99R and Static-2002R risk assessments.[4]

To the extent that Parsons challenges the method by which Dr. Putnam applied those actuarial instruments, such arguments go to weight, not admissibility. *Thorell*, 149 Wn.2d at 753. Parsons cross-examined Dr. Putnam's methods and presented testimony from his own expert to rebut Dr. Putnam's conclusions. Such conflicting expert opinions go to the weight of the evidence rather than its admissibility and are "'within the province of the jury to resolve.'" In. re Det. of *Campbell*, 139 Wn.2d 341, 358, 986 P.2d 771 (1999) (quoting *Barefoot v. Estelle*, 463 U.S. 880,

---

[4] *In re Pers. Restraint of Meirhofer*, 182 Wn.2d 632, 640-42, 343 P.3d 731 (2015) (Static-99R); *Ritter*, 177 Wn. App. at 521-22 (Static-99R and Static-2002R); *McGary*, 175 Wn. App. at 334 (Static-99R and Static-2002R).

902, 103 S. Ct. 3383 (W.D. Tex. 1982)). Therefore, Parsons's challenge to the trial court's admission of Dr. Putnam's testimony based, in part, on actuarial instruments, fails.

Separate from a *Frye* challenge, Parsons argues that the trial court should have excluded Dr. Putnam's testimony under ER 702 because the expert's methods were not scientifically validated or generally accepted in the relevant scientific community. Although he argues that Dr. Putnam's reliance on the SRA-FV and logical inferences to select Parsons for a "high risk, high needs" reference group was not generally accepted in the scientific community, our courts have already rejected both arguments. Br. of Appellant at 8. We recently held that "the scientific theory or principle upon which the SRA-FV is based has gained general acceptance in the relevant scientific community of which it is a part." *In re Det. of Pettis*, ___ Wn. App. ___, ___ P.3d ___, 2015 WL 3533220, *6 (2015) (affirming the admission of expert testimony based on the SRA-FV and other risk assessment instruments that placed an offender in a "high risk" category). But we hold that Parsons's challenge to the SRA-FV is moot because, at trial, the State agreed not to present evidence regarding the SRA-FV.

"Under the deferential standard of ER 702, a trial court does not abuse its discretion by allowing an expert to testify when the helpfulness of the expert's testimony is fairly debatable." *Pettis*, 2015 WL 3533220, at *7 (citing *Green*, 182 Wn. App. at 146). Dr. Putnam's testimony about the Static-99R and Static-2002R actuarial instruments provided scientific, specialized knowledge about Parsons's risk factors that would assist the jury in determining the likelihood that he would reoffend if released. *Pettis*, 2015 WL 3533220, at *7. We hold that the trial court did not abuse its discretion by admitting Dr. Putnam's testimony.

### III. PRECLUDING USE OF THE TERM "INCARCERATION"

Parsons argues that the trial court prejudiced him and abused its discretion by precluding the parties from referring to his commitment at the SCC as "incarceration." Br. of Appellant at 27. He contends that the State "sought to keep the whole truth of Parsons's detention from the jurors . . . [to] ease[] its burden of proof," and that the jury would have reached a different conclusion if he could characterize his detention at the SCC as "incarceration." Br. of Appellant at 29.

We review a trial court's rulings on motions in limine for abuse of discretion. *In re Det. of Post*, 145 Wn. App. 728, 741 n.8, 187 P.3d 803 (2008). Judicial discretion is abused if exercised on untenable grounds or for untenable reasons. *State v. Ruiz*, 176 Wn. App. 623, 634, 309 P.3d 700 (2013), *review denied*, 179 Wn.2d 1015 (2014). Even if the trial court abuses its discretion, the error is not reversible unless the appellant demonstrates prejudice. *Portch v. Sommerville*, 113 Wn. App. 807, 810, 55 P.3d 661 (2002).

Our Supreme Court has stated, "'Commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called 'criminal' or 'civil.'" *In re Det. of D.F.F.*, 172 Wn.2d 37, 40 n.2, 256 P.3d 357 (2011) (quoting *Application of Gault*, 387 U.S. 1, 50, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967)). Here, the trial court ruled that "confined" and "detained" would "strike[] the right balance," implying that the term "incarceration" was potentially prejudicial. 1 VRP at 9. But our Supreme Court has expressly referred to SVP commitment as "incarceration." *D.F.F.*, 172 Wn.2d at 40 n.2.

Assuming, without deciding, that "incarceration" is a proper term for SVP commitment in an SVP jury trial, Parsons fails to show that the trial court's error was prejudicial. *Portch*,

113 Wn. App. at 810. Parsons does not contest the underlying sex offenses, and the State presented significant evidence demonstrating Parsons's current likelihood of re-offense. Whether the parties referred to commitment at the SCC as "incarceration," "commitment," or "detention," all terms are correct; and Parsons does not show any prejudice from the terms "commitment" or "detention" as opposed to the term "incarceration." *Portch*, 113 Wn. App. at 810.

## CONCLUSION

Because (1) the trial court did not err in admitting the personality disorder evidence, (2) the expert's actuarial instruments were not a novel scientific method requiring a *Frye* hearing, (3) the expert's testimony was admissible under ER 702 as helpful testimony, and (4) Parsons fails to show prejudice from the trial court's exclusion of the term "incarcerated," we affirm the trial court's order committing Parsons as a sexually violent predator to the Special Commitment Center.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, A.C.J.

LEE, J.

14