IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Detention of | ) | No. 32762-1-III |
| | ) | |
| SCOTT R. HALVORSON, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

PENNELL, J. — Scott Halvorson appeals an order of commitment based on a jury

finding that he is a sexually violent predator (SVP). Mr. Halvorson argues the admission

of improper, prejudicial evidence deprived him of his right to a fair trial. We affirm.

FACTS

Mr. Halvorson[1] has a lengthy history of sex offenses. During his SVP trial, Mr.

Halvorson testified about his history and denied responsibility for most of the past

allegations against him, including those resulting in convictions. With the exception of

inappropriate sexual contact with his sisters as a juvenile, Mr. Halvorson testified his

other past sex offense accusations were fabricated, misconstrued, or occurred while he

was blacked out from alcohol.

---

[1] Mr. Halvorson currently goes by the name Raymond Scott Reynolds. However, the majority of the record refers to him as Scott Halvorson, and the State filed an SVP petition under this name.

Mr. Halvorson's most recent conviction was in 2008 for third degree rape and second degree assault. The victim of that crime is a female identified as D.S. She sustained petechial hemorrhaging and other bruising from the assault. Mr. Halvorson maintained he had consensual sex with D.S. and that the bruising occurred because D.S. asked to be choked during intercourse.

Before the SVP trial, Mr. Halvorson sought permission to introduce evidence corroborating his claim that he had consensual sex with D.S. Pertinent to this appeal, Mr. Halvorson moved under ER 412 to introduce evidence that a witness had once observed D.S. requesting another man "choke" her during an act of prostitution. Br. of Resp't at 21. The trial court excluded the evidence, commenting that the proffered incident was "somewhat remote" and "also kind of speculative." 2 Verbatim Report of Proceedings (VRP) (Aug. 19, 2014) at 315. The court ruled the evidence did not appear to be relevant.

In addition to requesting permission to admit evidence, Mr. Halvorson also moved to exclude testimony by the State's expert witness, Dr. Brian Judd. Mr. Halvorson objected to testimony from Dr. Judd about his diagnoses of antisocial personality disorder, alcohol dependence, and marijuana abuse. The trial court overruled Mr. Halvorson's objections, explaining the diagnostic testimony was "appropriate" and admissible. *Id.* at 312. The court noted some prejudicial effect in admitting the alcohol

2

dependence and marijuana abuse evidence but concluded it did not warrant exclusion.

At trial, Dr. Judd testified he had diagnosed Mr. Halvorson with paraphilia not otherwise specified (nonconsent), pedophilic disorder, antisocial personality disorder, alcohol dependence in a controlled environment, and cannabis abuse disorder. According to Dr. Judd, the pedophilia and paraphilia are mental abnormalities and are chronic conditions. The antisocial personality disorder diagnosis was based on Mr. Halvorson's pervasive disregard for and violation of the rights of others, deceitfulness, impulsivity, irritability and aggressiveness, reckless disregard for the safety of self and others, repeated failure to adhere to responsibilities under court supervision, and lack of remorse.

Dr. Judd opined that Mr. Halvorson's mental abnormalities of pedophilia and paraphilia are what predispose Mr. Halvorson to commit sexually violent offenses. Dr. Judd explained that while an antisocial personality disorder, standing alone, would not predispose a person to commit sexually violent offenses, it can operate as a contributing factor, increasing the risk of re-offense. Because of the interplay between antisocial personality disorder and Mr. Halvorson's mental abnormalities, Dr. Judd integrated Mr. Halvorson's diagnosis for antisocial personality disorder into his overall risk assessment.

While Mr. Halvorson's antisocial personality disorder was relevant to his risk assessment, Dr. Judd explained Mr. Halvorson's history of alcohol dependence and

3

marijuana use were not. According to Dr. Judd, a treatment program could address any risk posed by Mr. Halvorson's drug and alcohol problems.

The last pretrial motion relevant to this appeal was Mr. Halvorson's objection to the admission of Structured Risk Assessment-Forensic Version (SRA-FV) evidence under *Frye*.[2] The trial court admitted the testimony.

The jury ultimately found Mr. Halvorson to be an SVP, and the trial court entered an order committing him to the custody of the Department of Social and Health Services. Mr. Halvorson appeals.

## ANALYSIS

*Evidence of personality disorder, alcohol dependence, and marijuana abuse*

In order to be admissible, evidence must be relevant. ER 402. In the current context, evidence is relevant if it bears on the elements the jury must consider in determining whether the respondent to an SVP petition is an SVP. *In re Det. of West*, 171 Wn.2d 383, 397, 256 P.3d 302 (2011) (citing ER 401). Those elements are: "(1) that the respondent has been convicted of or charged with a crime of sexual violence, (2) that the respondent suffers from a mental abnormality or personality disorder, and (3) that such abnormality or disorder makes the person likely to engage in predatory acts of sexual

---

[2] *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (D.C. Cir. 1923).

4

violence if not confined in a secure facility."[3] *West*, 171 Wn.2d at 397 (citation and internal quotation marks omitted) (quoting *In re Det. of Post*, 170 Wn.2d 302, 310, 241 P.3d 1234 (2010)). "Even if relevant, however, evidence may still be excluded if its probative value is substantially outweighed by the likelihood it will mislead the jury." *State v. Luvene*, 127 Wn.2d 690, 706, 903 P.2d 960 (1995) (citing ER 403).

We first address Mr. Halvorson's objection to the personality disorder evidence. In general, "mental abnormality" and "personality disorder" are alternative means by which the State can prove a person meets criteria as an SVP. *In re Det. of Halgren*, 156 Wn.2d 795, 809-11, 132 P.3d 714 (2006). If both mental abnormality and personality disorder are charged, care must be taken to ensure jury unanimity. *See id.*

The State originally petitioned to have Mr. Halvorson committed as an SVP on the basis of both alternative means. But after Dr. Judd testified Mr. Halvorson's antisocial personality disorder would not, by itself, pose a risk of recidivism, the final jury instructions were amended. Under the final instructions, a finding of commitment could only be based on the jury's determination that Mr. Halvorson had an applicable mental abnormality.

---

[3] These elements are derived from the definition of SVP at RCW 71.09.020(18).

Given the final charge to the jury, Mr. Halvorson argues his personality disorder became irrelevant and it was overly prejudicial to allow the jury to consider this evidence. We disagree. The court's instructions protected Mr. Halvorson against the risk the jury would improperly convict him on the personality disorder prong of the SVP statute. Although the instructions provided this protection, they did not render the personality disorder evidence irrelevant. The State was entitled to draw upon Mr. Halvorson's general personality and history to place his mental abnormality in context and meet its burden to prove future risk of recidivism. *See In re Det. of Audett*, 158 Wn.2d 712, 147 P.3d 982 (2006) (State presented sufficient evidence when respondent's alcoholism combined with his pedophilia to create a risk of recidivism); *In re Det. of Sease*, 149 Wn. App. 66, 201 P.3d 1078 (2009) (combination of a variety of risk factors relevant to proving risk of recidivism).

The manner in which the State presented its case reduced any risk of juror confusion about the probative nature of the personality disorder evidence. The State clarified in closing argument that Mr. Halvorson's mental abnormality was the basis for commitment but that the personality disorder folded into the risk assessment. This was consistent with Dr. Judd's testimony and the court's instructions. The State's presentation was appropriate and there is no basis for reversal.

Our analysis of the alcohol and marijuana abuse evidence is different, but the end result is the same. Dr. Judd did not find Mr. Halvorson's substance abuse relevant to the recidivism risk. Given this circumstance, the court probably should have granted Mr. Halvorson's motion for pretrial exclusion. But once trial began, things changed. Mr. Halvorson introduced evidence of his substance abuse before the State ever got to Dr. Judd's testimony. Mr. Halvorson testified about his struggles with alcohol and use of marijuana. He explained he was drunk or blacked out during most of his past offenses. If anything, Dr. Judd's testimony that Mr. Halvorson's substance dependence was treatable and did not create a risk of recidivism reduced the prejudice of the drug and alcohol evidence volunteered by Mr. Halvorson. Admission of Dr. Judd's testimony did not constitute reversible error.

*Evidence of alleged consent to asphyxiation*

Mr. Halvorson contests the trial court's decision to exclude evidence suggesting D.S. consented to sexual asphyxiation on a previous occasion with another man. He argues exclusion of this evidence violated ER 412 and his due process right to present a complete defense.

ER 412(c) provides that in a civil case, "evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise

7

admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." A trial court's ruling on evidentiary matters is reviewed for manifest abuse of discretion. *State v. Magers*, 164 Wn.2d 174, 181, 189 P.3d 126 (2008).

Mr. Halvorson's proffered ER 412 evidence was testimony from a witness who once heard D.S. say, "Choke me. Choke me," while engaged in an act of prostitution with an unknown client. Br. of Resp't at 21-22. According to Mr. Halvorson, this evidence suggested D.S. found strangulation arousing, thereby corroborating his claim that D.S. had consented to sex with him and wanted to be choked. Although Mr. Halvorson raised a consent defense at his original rape trial, he apparently did not seek to introduce the prior "Choke me. Choke me," statements at that time. So although D.S. testified at the original trial, she was never given the opportunity to respond to the allegation that she had made these prior statements. By the time of Mr. Halvorson's SVP trial, D.S. had died.

When ruling on Mr. Halvorson's motion to present the "Choke me. Choke me," evidence, the trial court stated the incident was "somewhat remote" and "also kind of speculative." 2 VRP (Aug. 19, 2014) at 315. The court added, "And I am not impressed with that testimony as it being specifically relevant to the question of the underlying

motivation for the sex, which was a trade for drugs, allegedly." *Id.* No further explanation, written or oral, was provided.

The superior court did not abuse its discretion in excluding the proffered testimony as speculative. What D.S. might have meant by "Choke me. Choke me," is unclear. Was D.S. expressing a statement of desire? If so, her statements would appear to be inadmissible hearsay because they would be offered for the truth of the assertion that D.S. wanted to be choked. Was D.S. issuing a command? If so, then without further explanation, the statements would not appear to be relevant. D.S. was purportedly engaged in prostitution at the time of her prior statements. Given this context, it is far from certain that any commands issued by D.S. would have been a result of her own desires or preferences. Had D.S. still been alive and able to respond to the allegation that she had previously said, "Choke me. Choke me," our analysis might well be different. Under the current circumstances, we agree the trial court's order of exclusion was appropriate.

*Admissibility of SRA-FV evidence*

Mr. Halvorson argues the trial court improperly admitted SRA-FV evidence because it is not sufficiently reliable to meet the standard for admissibility under *Frye*. Subsequent to the briefing in this case, this Division joined Division Two in holding that

No. 32762-1-III
*In re Det. of Halvorson*

it is. *In re Det. of Ritter*, 192 Wn. App. 493, 372 P.3d 122 (2016), *review denied by* 185 Wn.2d 1039, ___ P.3d ___ (2016). Consistent with our analysis in *Ritter*, we reject Mr. Halvorson's challenge to the admission of SRA-FV testimony in his case.

## CONCLUSION

Mr. Halvorson's order of commitment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____   _____
Lawrence-Berrey, A.C.J.          Korsmo, J.